IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Robert Harvie Payne, ) | |
| ) | Civil Action No. 6:12-186-DCN-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Theo Jacobs, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motions to dismiss (docs. 19, 20) of defendants Dr. Theo Jacobs and Carolina Center for Occupational Health, LLC ("CCOH") and the motion for summary judgment (doc. 38) of defendant Charleston County. The plaintiff, a pretrial detainee at the Sheriff Al Cannon Detention Center, alleges a claim for deliberate indifference to serious medical needs.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On March 7, 2012, defendants CCOH and Dr. Jacobs filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (doc. 19, 20). By order filed March 8, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss procedure and the possible consequences if he failed to adequately respond to the motion. On April 16, 2012, the plaintiff filed a response to both motions, and Dr. Jacobs and CCOH filed replies on April 26, 2012. Attached to his response, the plaintiff submitted his un-notarized affidavit, grievances, certain detention

---

[1] These defendants also moved for dismissal of the complaint under other subsections of Rule 12(b).

center policies, and a lab report (*see* docs. 32-1, 32-2, 32-3). As these matters have been presented to and not excluded by the court, the motions to dismiss of defendants Dr. Jacobs and CCOH will be treated as motions for summary judgment. *See* Fed.R.Civ.P. 12(d).[2]

On April 26, 2012, defendant Charleston County filed a motion for summary judgment. By order filed April 27, 2012, pursuant to *Roseboro*, the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response on June 4, 2012, and Charleston County filed a reply on June 22, 2012.

## **FACTS PRESENTED**

The plaintiff was arrested and taken into custody on or about May 29, 2011, and has been detained since that time at the Sheriff Al Cannon Detention Center. CCOH is the medical services provider for the detention center, and Dr. Jacobs is a physician at the detention center. The plaintiff alleges in his complaint that the defendants have "denied all treatment to date" for his prostate cancer (comp. 3).

In support of its motion for summary judgment, defendant Charleston County submitted the affidavit of Dawn Frazier, who is employed by CCOH as a Director of Nursing. According to Ms. Frazier's affidavit, since May 2010, the plaintiff has had at least 48 actual clinical visits[3] with medical staff at the detention center (doc. 38-2, Frazier aff. ¶ 7). On June 28, 2011, the plaintiff was seen by Dr. Jacobs with a chief complaint of asthma, diabetes, and prostate cancer (*id.* ¶ 8). The plaintiff told the doctor that he had been diagnosed with prostate cancer six years prior, but he refused treatment because it had

---

[2] Pursuant to Federal Rule of Civil Procedure 12(d), "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. . . ."

[3] This number does not include individual medication administered to the plaintiff (Frazier aff. ¶ 7).

never been shown to prolong life. Instead, the plaintiff insisted that all medical issues could be treated by a diet consisting of fruits and vegetables and no dairy (*id.* ¶¶ 9-10).

On August 10, lab tests were completed to determine the plaintiff's prostate-specific antigen ("PSA") levels, and physician's assistant Karen Huffman discussed the results of these tests with the plaintiff on August 29, 2011. On the August 29th visit, the plaintiff informed Ms. Huffman that he did not want conventional treatment such as radiation, chemotherapy, or surgery, and instead believed that he could treat his cancer himself through diet. The plaintiff insisted that the detention center was denying him access to treatment by not providing proper nutrition. The plaintiff advised that he wanted ten pounds of carrots a day, as well as cabbage, oranges, and D3 vitamins. Ms. Huffman explained to the plaintiff that they have repeatedly discussed providing him with conventional treatment for his cancer, but the detention center and CCOH could not accommodate his dietary requests. Ms. Huffman also advised the plaintiff that a referral to urology would be made (Frazier aff. ¶¶ 12-15).

On January 6, 2012, the plaintiff was seen on a sick call and requested a referral to the Medical University of South Carolina ("MUSC"). The medical staff explained to the plaintiff that issues related to his cancer and treatment had been discussed on multiple occasions before and that his request for a referral would be followed up on by a member of the medical staff (Frazier aff. ¶ 17).

The complaint in this case was filed on January 23, 2012. On February 23, 2012, the plaintiff was seen by Dr. Jacobs for prostate cancer issues, and the plaintiff informed Dr. Jacobs that he would seek treatment once he was released, which he believed would occur in two weeks (Frazier aff. ¶¶ 18-19). Ms. Frazier further attested that referrals had been made for the plaintiff to seek treatment at MUSC, but as of the date of her affidavit (April 25, 2012), the referrals had not been accepted by MUSC (*id.* ¶ 20).

3

Defendant Charleston County also submitted the affidavit of Willis Beatty, who is employed by the detention center as a Major, in support of its reply brief. According to Major Beatty, inmates at the detention center can be referred by CCOH to outside medical care providers for medical treatment. Once the detention center receives notice that a referral is accepted, the detention center arranges for the inmate to be transported. A list of referrals with the date the medical consult was written as well as the date of the future appointment is kept in a "CCOH Referral Review Tracking Log." Inmates cannot be told when the medical appointment with the outside provider is scheduled for safety and security reasons (doc. 76-1, Beatty aff. ¶¶ 8-11). According to the referral log, a medical consult was written for the plaintiff on April 12, 2012. Major Beatty received an email on May 9, 2012, from CCOH advising that the plaintiff was scheduled for an appointment at the MUSC urology clinic on June 5, 2012. Thereafter, the detention center made arrangements to have the plaintiff transported to MUSC, without advising the plaintiff due to safety and security reasons. The plaintiff was transported to MUSC for his appointment on June 5, 2012, and he was transported again on June 18, 2012, for a follow-up visit (*id.* ¶¶ 12-16).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

4

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Deliberate Indifference*

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical

services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). With regard to the objective component, a medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Plaintiffs must also show the subjective component-deliberate indifference. An officer is deliberately indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence or malpractice does not violate the Eighth Amendment. *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999)*.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

The plaintiff's claims regarding denial of treatment must fail as he cannot show deliberate indifference. The evidence before the court is that the medical staff at the detention center were aware of his prostate cancer, they ran tests for prostate cancer, and recommended treatment on multiple occasions. For several months, the plaintiff refused any conventional medical treatment for his prostate cancer and, instead, insisted that he could treat the cancer himself through diet. Once the plaintiff finally decided that he should take his doctor's advice to seek conventional cancer treatment, referrals were made for treatment at MUSC. When MUSC accepted the plaintiff as a patient, the plaintiff was transported for appointments on at least two occasions.

Further, previously in this case, the plaintiff filed motions for a preliminary injunction requiring the defendants to make referrals and transport him to the Veteran's Administration (and MUSC) for treatment of his prostate cancer (*see* docs. 34, 42). On May 24, 2012, this court issued a report (doc. 53) recommending that the motions be denied as, according to the Code of Federal Regulations, the plaintiff is not entitled to medical treatment at the VA while he is incarcerated. 38 C.F.R. § 17.38(c)(5). The Honorable David C. Norton, United States District Judge, adopted that recommendation on June 12, 2012 (doc. 66).

In his affidavit submitted in opposition to defendant Charleston County's motion for summary judgment, the plaintiff states that "There are no valid medical studies that show conventional medical treatment extends life span or improves quality of life," and he argues that he should be given a therapeutic cancer diet (doc. 62-1, pl. aff. ¶¶ 5-10). As noted above, the Constitution does not guarantee to a prisoner the treatment of his choice, and disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim absent exceptional circumstances. The plaintiff's claim that the defendants should be required to provide him with a "cancer diet" has been addressed and denied or dismissed by this court repeatedly in the plaintiff's

7

myriad other lawsuits and motions. *See Payne v. Fennell*, C.A. No. 6:11-2011-DCN-KFM, docs. 32, 56, 68, 98, 101, 103; *Payne v. Young*, C.A. No. 6:12-CV-00005-DCN, docs. 27, 30. *See, e.g.*, *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

The plaintiff has failed to show that a genuine issue of material fact remains on this claim. Based upon the foregoing, summary judgment should be granted on the plaintiff's deliberate indifference claim.

## *Municipal Liability*

Moreover, the plaintiff has not pled that any practice, policy, or custom of defendant Charleston County created a constitutional violation in this case. "In order to maintain a 42 U.S.C. § 1983 municipal liability claim, a plaintiff must affirmatively establish that the alleged constitutional violation was directly caused by an official practice, policy or custom of the municipality." *Allen v. Aiken County*, C.A. No. 4:08-2474-PMD, 2009 WL 1065406, at *3 (D.S.C. 2009) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694, (1978)). Because the plaintiff has failed to make the required showing, the County should be dismissed on this basis as well.

## *Equal Protection*

In his complaint, the plaintiff alleges an equal protection claim (comp. 2). However, any such claim is wholly unsupported as there are no allegations or evidence of purposeful discrimination or disparity in treatment from those similarly situated to the plaintiff. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

## *State Law Claim*

The plaintiff also alleges a claim for malpractice in his complaint (comp. 2). Having found that the defendants are entitled to summary judgment regarding the plaintiff's constitutional claim, it is recommended that the court decline to exercise supplemental

jurisdiction over any claim for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motions (docs. 19, 20, 38) be granted.

IT IS SO RECOMMENDED.


November 19, 2012                                             s/ Kevin F. McDonald
Greenville, South Carolina                              United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.